**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

*United States v. Patrick Iler*
Case No. 1:25-cr-00008-TMB-MMS-1

By: THE HONORABLE TIMOTHY M. BURGESS

PROCEEDINGS: ORDER FROM CHAMBERS

The matter comes before the Court on the Final Report and Recommendation ("Final R&R") of the Magistrate Judge.[1] On February 27, 2026, Defendant Patrick Iler filed a Motion to Suppress (the "Motion").[2] The Government filed a Response in Opposition.[3] The Government objected[4] to the Initial Report and Recommendation,[5] and Iler replied.[6] On October 9, 2026, the Magistrate Court entered its Final R&R, recommending the Court grant in part and deny in part Iler's Motion.[7]

The Court has conducted a de novo review, and for the reasons discussed below, **ACCEPTS and ADOPTS WITHOUT MODIFICATION** the Final R&R at Docket 184. Accordingly, the Motion at Docket 91 is **GRANTED IN PART** and **DENIED IN PART,** and the Objections at Docket 178 are **OVERRULED**.

## I. FACTUAL BACKGROUND

On February 12, 2025, just after 9:00PM, Juneau Police Department Detective Timothy A. Kissner ("Detective Kissner") stopped a 2007 Subaru Impreza being driven by Iler.[8] Detective Kissner ran Iler's driver's license and discovered that Iler had two probation warrants out for his arrest.[9] Upon arresting Iler, Detective Kissner performed a search of Iler's person, taking a knife from him and moving Iler's wallet "from his hip pocket to his front pocket, which Detective Kissner characterized as a routine procedure. When he was briefly holding the wallet, he noticed that there was a large amount of cash inside it because of its size."[10] Detective Kissner explained during his testimony that the initial search of Iler was for officer safety and to control what items are brought

[1] Dkt. 184 (Final Report and Recommendation).
[2] *See* Dkt. 91 (Defendant Iler's Motion to Suppress).
[3] Dkt. 119 (Government's Response in Opposition to Defendant Iler's Motion to Suppress).
[4] Dkt. 178 (Government's Objection to Report and Recommendations).
[5] Dkt. 162 (Initial Report and Recommendation).
[6] Dkt. 181 (Defendant Iler's Reply to Objection to Report and Recommendation).
[7] *See generally* Dkt. 184.
[8] *Id.* at 3–4.
[9] *Id.* at 4.
[10] *Id.*

into the Lemon Creek Correctional Center.[11] Detective Kissner indicated to Iler's co-defendant, Erika Porter (who was a passenger in the Impreza), that he was going to search the vehicle; he clarified during his testimony at the evidentiary hearing that he misspoke and was at that time waiting to hear back from Iler's probation officer to conduct a search of the vehicle.[12] The probation officer ultimately never responded.[13]

Task Force Officer Jessee Fergin-Kuehnl ("TFO Fergin-Kuehnl") arrived at the scene.[14] Shining his flashlight into the Impreza, he testified that he observed "tinfoil [] consistent with drug use and is often found during drug distribution cases" inside the vehicle.[15] TFO Fergin-Kuehnl testified that "he saw a red sandwich bag in the driver's side door pocket, Ziploc bags in [] Porter's partially opened bag, and a black safe."[16] Based on these observations, TFO Fergin-Kuehnl believed the vehicle would contain evidence of a crime.[17] TFO Fergin-Kuehnl then had Iler transported to the police station and applied for a warrant to search the vehicle.[18]

The Court assumes the parties' familiarity with the additional relevant facts.

## II. LEGAL STANDARD

### *A.* De novo *review*

Under 28 U.S.C. § 636(b)(1)(C), a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[19] A court is to "make a de novo determination of those portions of the magistrate judge's report or specified proposed findings or recommendations to which objection is made."[20] But as to those topics on which no objections are filed, "[n]either the Constitution nor [28 U.S.C. § 636(b)(1)] requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct."[21]

---

[11] *Id.* at 6 (citing Dkt. 159 at 38:2–17).
[12] *Id.* at 4.
[13] *Id.*
[14] *Id.* at 4–5.
[15] *Id.* at 15 (citing Dkt. 160 at 43:17–44:11).
[16] *Id.* (citing Dkt. 160 at 44:12–45:3).
[17] *Id.* (citing Dkt. 160 at 45:5–12).
[18] *Id.* at 15–16 (citing Dkt. 160 at 50:11–16, 52:14–53:19).
[19] 28 U.S.C. § 636(b)(1)(C).
[20] *Id.*
[21] *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

### B. *Reckless Disregard Under* Franks v. Delaware

Under *Franks v. Delaware*, a search warrant must be voided if, after a hearing, a defendant is able to show by a preponderance of the evidence that "(1) the affidavit contains intentionally or recklessly false statements [or omissions], and (2) the affidavit purged of its falsities would not be sufficient to support a finding of probable cause."[22]

### C. *Good Faith Exception*

Evidence obtained in violation of the Fourth Amendment to the United States Constitution generally must be excluded at trial.[23] "While the Supreme Court has articulated various rationales for the exclusionary rule, the rule's primary purpose has been to deter law enforcement from carrying out unconstitutional searches and seizures."[24] However, the good faith exception to the exclusionary rule precludes suppression of evidence seized pursuant to a defective search warrant when an officer acts "in objectively reasonable reliance" on such warrant, even if it is later determined that the warrant was not supported by probable cause.[25] There are four circumstances in which the good faith exception does not apply:

> (1) when the affiant knowingly or recklessly misleads the issuing judge with false information; (2) when the judge wholly abandons his or her neutral role; (3) when the affidavit is so lacking in indicia of probable cause that official belief in its existence is objectively unreasonable; and (4) when the warrant is facially deficient such that executing officers cannot reasonably presume it to be valid.[26]

## III. FILINGS AND OBJECTIONS

### A. *Objections to the Initial R&R*

The Magistrate Judge issued the Initial R&R after holding a two-days of Evidentiary Hearing on July 14 and 15, 2026.[27] The Initial R&R recommended that the Court grant the Motion in part, "suppressing (1) all evidence discovered within the black Subaru resulting from Search Warrant

---

[22] *United States v. Lefkowitz*, 618 F.2d 1313, 1317 (9th Cir. 1980) (citing *Franks v. Delaware*, 438 U.S. 154 (1978)).
[23] *Mapp v. Ohio*, 367 U.S. 643, 657 (1961) ("[T]he exclusionary rule is an essential part of both the Fourth and Fourteenth Amendments.").
[24] *United States v. Underwood*, 725 F.3d 1076, 1084 (9th Cir. 2013).
[25] *United States v. Leon*, 468 U.S. 897, 922–23 (9th Cir. 1984); *Underwood*, 725 F.3d at 1085.
[26] *United States v. Luong*, 470 F.3d 898, 902 (9th Cir. 2006); *Leon*, 468 U.S. at 923.
[27] Dkts. 150 and 151 (Minute Entries for Evidentiary Hearing on Motion to Suppress); *see also* Dkt. 159 (Amended Transcript of Proceedings; Evidentiary Hearing held on 7/14/2026); Dkt. 160 (Transcript of Proceedings; Evidentiary Hearing held on 7/15/2026).

3AN-25-00526SW, and (2) all evidence from the search of [Iler's] cellphone[.]"[28] However, the Initial R&R recommended the Court deny the Motion as to the U.S. currency found on Iler's person.[29]

After the Court granted four motions for extension of time to file objections,[30] the Government objected on September 17, 2026, arguing as to Iler that: (1) "The R&R applied the incorrect *Franks* recklessness standard, and the record does not establish deliberate or reckless falsity[;]" (2) "[t]he corrected affidavit established probable cause; alternatively, *Leon* remains a distinct inquiry[;]" and (3) *United States v. Payne* "does not require suppression of Iler's cellphone evidence."[31]

Iler replied, arguing that the Court applied the correct *Franks* standard. Iler contended that *Leon* was inapplicable given the Final R&R's finding of recklessness under *Franks* and additionally argued that *Payne* requires suppression of Iler's cellphone evidence.[32]

*B. Final R&R*

As to the first objection, the Final R&R considered the standard for recklessness under *Franks* to be an objective rather than a subjective one.[33] However, the Final R&R also noted that, even if the standard were subjective, TFO Fergin-Kuehnl "had obvious subjective reasons to doubt that his observations within the vehicle were indicative of the crime he was investigating."[34] Regarding the Government's second objection, the Final R&R found that *Leon* does not require an additional finding of recklessness after having previously made such a finding under *Franks*.[35] Finally, as to the Government's third objection, the Final R&R referred back to the Initial R&R for its analysis of *Payne.*[36]

The Court addresses each objection de novo.

---

[28] Dkt. 162 at 3, 47.
[29] *Id.*
[30] Dkt. 163 (Minute Entry for Status Conference as to Patrick Iler and Erika Stephanie Porter) ("Court and counsel heard re objections to the R & R [] and the parties['] request for an extension."); Dkts. 169, 173, 177 (Text Orders Granting Motions for Extension of Time to File Objections to Report and Recommendations).
[31] *See* Dkt. 178 at 2–8.
[32] *See generally* Dkt. 181.
[33] Dkt. 184 at 41.
[34] *Id.*
[35] *Id.*
[36] *Id.*

## IV. DISCUSSION

### *A. The* Franks *recklessness standard is applicable; however, even were it not, the record does establish reckless falsity.*

The Government contends that the Final R&R "applied the incorrect *Franks* recklessness standard" and that "the record does not establish deliberate or reckless falsity[.]"[37] The Government argues that the Ninth Circuit "has not squarely resolved the subjective/objective split" regarding the requirement of a knowing, intentional, or reckless falsehood.[38] However, the Government cites one Ninth Circuit case which describes a "subjective intent requirement"[39] and notes that other circuits require "actual serious doubt or subjective appreciation of the risk of misleading the judge."[40] The Government contends that what is before the Court "does not show that TFO Fergin-Kuehnl actually entertained any doubt as to what he swore to, or that he acted recklessly in any of his observations or actions" and that, at the Evidentiary Hearing, he "explain[ed] the diligent steps he took to verify information he included and the conditions that impacted his observations that night."[41] The Government further argues that the "later conclusion that one item appeared to be a gum wrapper and that some of the plastic bag observations were of a bag of produce shows, at most, observational mistake—not subjective knowledge of falsity."[42]

Iler, in his Reply, notes that other circuits have held that when an officer has "obvious reasons to doubt the accuracy of the information he reported[,]" the court can find recklessness,[43] as the Final R&R did here.

The Final R&R writes that "the most direct averment as to drugs being present in the vehicle, the supposed tin foil, was plainly unsupported from the observations made at the scene."[44] In fact, the photo of the tin foil, purportedly for drug use, plainly appears to be a gum wrapper.[45] Moreover, the Final R&R concluded that "the selective description of the vehicle gives context to these errors[,]" noting that the "vehicle was filthy, in disarray, and had many items that could be described as . . . 'garbage[.]' [ ] Curating a few of those items and stretching their description to

---

[37] Dkt. 178 at 2–3.
[38] *Id.* at 2.
[39] *Id.* at 2 (citing *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1123–26 (9th Cir. 1997)).
[40] *Id.* at 2 (citing *United States v. Ranney*, 298 F.3d 74, 78 (1st Cir. 2002); *United States v. Rajaratnam*, 719 F.3d 139, 153–54 (2d Cir. 2013); *United States v. Pulley*, 987 F.3d 370, 376–77 (4th Cir. 2021); *United States v. Xiang*, 12 F.4th 1176, 1182–83 (10th Cir. 2021)).
[41] *Id.* at 3 (citing Dkt. 162 at 60:18–25; 61:12–25; 90:14–22).
[42] *Id.*
[43] Dkt. 181 at 2 (citing *United States v. Clapp*, 46 F.3d 795, fn. 6 (8th Cir. 1995)).
[44] Dkt. 184 at 33.
[45] *See* Ex. 214.

make them sound nefarious lends itself to the conclusion of recklessness."[46]

The Court agrees. Upon de novo review of the circumstances and the transcripts of the Evidentiary Hearing, the Court finds that TFO Fergin-Kuehnl's conclusion that there would be evidence of a crime within the Impreza was recklessly false. Although the Government cites TFO Fergin-Kuehnl's "diligent steps . . . to verify information he included and the conditions that impacted his observations that night[,]"[47] the Court finds that there were obvious reasons for TFO Fergin-Kuehnl to doubt the accuracy of the information he reported. Moreover, although the Government contends that there is nothing to suggest TFO Fergin-Kuehnl "entertained any doubt as to what he swore to, or that he acted recklessly in any of his observations or actions[,]"[48] the Court concludes that, as the Final R&R noted, "the record supports a finding that TFO Fergin-Kuehnl had obvious subjective reasons to doubt that his observations within the vehicle were indicative of the crime he was investigating."[49]

The Court therefore overrules this objection.

*B. TFO Fergin-Kuehnl was reckless in his application for the search warrant; the Good Faith Exception is therefore inapplicable.*

The Government argues in its Objections that the corrected affidavit established probable cause and that the Good Faith Exception analysis under *Leon* is an inquiry distinct from the recklessness inquiry under *Franks*.[50] The Government argues for the first time[51] that, five days before the stop of the Impreza, officers recovered 13 gross grams of methamphetamine from an individual who identified Porter as the buyer's source of supply.[52] The Government contends that this information "created a fair probability" that the Impreza, five days later, contained evidence of drug trafficking because Porter was a passenger in the vehicle with, among other items, a safe.[53] As those details were included in the corrected affidavit, the Government argues that, "absent subjective *Franks* misconduct, the detailed affidavit supplied at least a colorable basis for reliance" on the warrant under *Leon*, which "asks objectively whether reliance on the warrant was reasonable[.]"[54]

---

[46] Dkt. 184 at 33–34.
[47] Dkt. 178 at 3 (citing Dkt. 162 at 60:18-25; 61:12-25; 90:14-22).
[48] *Id.*
[49] Dkt. 184 at 41.
[50] Dkt. 178 at 4.
[51] Dkt. 183 (Final Report and Recommendation as to Erika Stephanie Porter) at 24 ("[T]he [G]overnent did not develop this record during the voluminous briefings and evidentiary proceedings.").
[52] Dkt. 178 at 4.
[53] *Id.*
[54] *Id.* (citing Leon, 468 U.S. at 922–23, 926).

The Final R&R wrote that "the good faith analysis is moot, as recklessness under *Franks* necessarily falls into *Leon*'s recklessness exception."[55]

The Court agrees that a finding of recklessness under *Franks* does not require a separate analysis to satisfy *Leon*. Moreover, the Court notes that the Ninth Circuit has held that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation."[56] However, even considering this new information, the Court is not persuaded by the Government's contention that the recovery of methamphetamine from an individual alleging to have purchased the drugs from Porter days earlier provided "a colorable basis for reliance" on the warrant.

*C.* United States v. Payne *requires suppression of evidence found on Iler's cellphone.*

The Government states that TFO Fergin-Kuehnl "directed Iler to use his right thumb to open the phone. Iler initially tried a few different fingers before TFO Fergin-Kuehnl instructed him to 'try your other thumb[,]' . . . [and that] Iler's right thumb unlocked the phone."[57] The Government argues that "the compelled act was presentation of a physical biometric pursuant to a warrant prior to compulsion. After giving Iler the opportunity to voluntarily comply with the biometric order, law enforcement instructed him to use his right thumb, which unlocked the device."[58]

Iler replies that the Government's above outline of events is inaccurate, stating that TFO Fergin-Kuehnl "provided two phones to Iler. Iler selected his finger to open the first phone[,] but it was not accessible to Iler. TFO Fergin[-Kuehnl] then gave Iler the cell phone obtained pursuant to the invalid warrant[,]" and Iler himself chose which finger to use to unlock the phone, "without any direction from TFO Fergin-[Kuehnl].[59]

The Final R&R reasoned that,

> [a]ssuming an underlying legal justification such as a warrant, it would not violate the Fifth Amendment to take a ring of keys from an individual and try each until one unlocked a safe, but it would be a violation to force an individual to tell law enforcement the passcode to that same safe. However, would it be a violation to

[55] Dkt. 184 at 34.
[56] *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000) (holding that the magistrate judge did not abuse discretion in refusing to hold an evidentiary hearing on the defendant's motion to suppress and that the district court, on de novo review of the magistrate judge's recommended denial of an evidentiary hearing, did not abuse its discretion in refusing to consider supplemental factual allegations which the defendant had not presented to the magistrate judge).
[57] Dkt. 178 at 6.
[58] *Id.* at 7.
[59] Dkt. 181 at 5.

force that individual to reveal which specific key unlocked the safe? Under *Payne*, this Court believes that it would. [60]

The Ninth Circuit held in *United States v. Payne* that law enforcement's use of a defendant's thumb to unlock his cell phone following traffic stop after the defendant refused to divulge his passcode was not "testimonial" and thus did not violate Fifth Amendment privilege against self-incrimination.[61] The Ninth Circuit reasoned that, where there is no cognitive exertion by a defendant in law enforcement's use of the defendant's thumb to unlock a phone, law enforcement is not intruding on the contents of the defendant's mind nor compelling the defendant to acknowledge the existence of any incriminating information.[62] Additionally, the Circuit Court reasoned that the situation is more comparable to a physical key to a safe rather than compelling a defendant to provide a combination to a safe: "While providing law enforcement officers with a combination to a safe or passcode to a phone would require an individual to divulge the 'contents of his own mind,' turning over a key to a safe or a thumb to unlock a phone requires no such mental process."[63]

Having reviewed the body worn camera footage of Juneau Police and Iler as officers sought to unlock the phones and de novo reviewed the filings in this case,[64] the Court concludes that law enforcement tasked Iler with "cognitive exertion" in choosing which fingers to use to unlock the phones. The Court therefore overrules the objection.

## V. CONCLUSION

Accordingly, Iler's Motion to Suppress at Docket 91 is **GRANTED IN PART** and **DENIED IN PART,** and the Objections at Docket 178 are **OVERRULED**. The Court **ACCEPTS and ADOPTS WITHOUT MODIFICATION** the Final R&R at Docket 184.

Entered at the direction of the Honorable Timothy M. Burgess, United States District Judge.

DATE: November 2, 2026.

---

[60] Dkt. 184 at 39.
[61] *United States v. Payne*, 99 F.4th 495, 511–13 (9th Cir.), *cert. denied*, 145 S. Ct. 605, 220 L. Ed. 2d 237 (2024).
[62] *Id.* at 511.
[63] *Id.* (quoting *United States v. Hubbell*, 530 U.S. 27, 43 (2000)).
[64] *See* Government Exhibit 21.